**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BRANDON THOMAS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **2:14-cv-1415** |
| v. | ) |
| | ) |
| **DANIEL STANEK**, *in his Official Capacity as* | ) |
| *Police Officer for the City of Washington and in his* | ) |
| *Individual Capacity,* **CHRISTOPHER LUPPINO**, | ) |
| *in his Official Capacity as Police Officer for the City* | ) |
| *of Washington and in his Individual Capacity,* **DAN** | ) |
| **RUSH** *a/k/a* **DANIEL RUSH**, *in his Official* | ) |
| *Capacity as Police Officer for the City of* | ) |
| *Washington and in his Individual Capacity,* | ) |
| **ROBERT WILSON**, *in his Official Capacity as* | ) |
| *Police Officer for the City of Washington and in his* | ) |
| *Individual Capacity,* **JOHN DOE**, *in his Official* | ) |
| *Capacity as Police Officer for the City of* | ) |
| *Washington and in his Individual Capacity,* **CITY** | ) |
| **OF WASHINGTON**, *a municipal corporation,* | ) |
| and **EUGENE A. VITTONE**, *in his Official* | ) |
| *Capacity as District Attorney of Washington County* | ) |
| *and in his Individual Capacity,* | ) |
| | ) |
| **Defendants.** | ) |

## <u>MEMORANDUM OPINION</u>

Now pending before the Court are the RULE 12(b)(6) MOTION TO DISMISS (ECF No.

9) filed by Defendants, Daniel Stanek ("Stanek"), Christopher Luppino ("Luppino"), Daniel

Rush ("Rush"), and Robert Wilson ("Wilson") and DEFENDANT'S MOTION TO DISMISS

PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6) (ECF No. 10) filed by

Defendant, Eugene Vittone ("Vittone"), with accompanying briefs (ECF Nos. 11, 12). Plaintiff,

Brandon Thomas, filed responses in opposition to each motion (ECF Nos. 16, 17), with a brief in

support (ECF No. 24). Stanek, Luppino, Rush, and Wilson filed a reply brief (ECF No. 25).

Accordingly, the motions are ripe for disposition.

1

## I. Background

This § 1983 action arises out of the shooting death of Vaughn Simonelli ("Simonelli") and the subsequent arrest and prosecution of Plaintiff for Simonelli's death. Plaintiff confessed to shooting Simonelli, but claimed it was done in self-defense. Following a jury trial, Plaintiff was acquitted of all charges related to the shooting. At all times relevant to this case, Stanek, Luppino, and Rush ("Defendant Officers") were members of the City of Washington Police Department and were involved in Plaintiff's arrest and prosecution.[1] Wilson was the City of Washington's Chief of Police, and Vittone was the Washington County District Attorney.

On October 18, 2012, the Defendant Officers were called to the parking lot of the Shop and Save grocery store on Jefferson Avenue in Washington for a reported shooting. Compl. ¶ 20. The call originated from Plaintiff, who admitted to shooting Simonelli after allegedly being cornered and attacked by him in the Shop and Save parking lot. Compl. ¶¶ 21-22. Following the shooting, Plaintiff unloaded his firearm and rendered it safe and also offered to provide first aid to Simonelli. Compl. ¶ 5.

When the Defendant Officers arrived on the scene, Plaintiff informed them what had occurred. Compl. ¶ 26. According to Plaintiff, he and Simonelli had an encounter on Jefferson Street, during which Simonelli used his car to ram Plaintiff's truck and threatened and cursed Plaintiff. Compl. ¶ 26(a). Plaintiff then fled from the scene, with Simonelli trailing behind him. Compl. ¶ 26(b). Plaintiff eventually pulled into the Shop and Save parking lot, and Simonelli pulled in behind him, blocking Plaintiff's truck from the rear of the parking space. Compl. ¶

---

1.    Plaintiff has also named a "John Doe" Defendant in this case. However, Plaintiff has never specifically identified this Defendant, and there is no indication in the record that this Defendant has been personally served pursuant to Fed. R. Civ. P. 4(e). Furthermore, no attorney has entered an appearance on this Defendant's behalf. Because service was not made within 120 days of the filing of Plaintiff's complaint (i.e., by February 14, 2015), any and all claims against "John Doe" must be dismissed, albeit without prejudice. *See* Fed. R. Civ. P. 4(m).

26(c). Plaintiff got out of the truck to walk away from the situation but Simonelli confronted him, aggressively advancing towards Plaintiff while making profanity-laced threats. Compl. ¶ 26(d)-(e). In an effort to make Simonelli back away, Plaintiff drew his firearm. Compl. ¶ 26(f). Simonelli, who smelled of alcohol, nevertheless continued to charge towards Plaintiff. Compl. ¶ 26(g). Plaintiff then holstered his firearm and returned to his truck, closing the door behind him. Compl. ¶ 26(h). Not backing down, Simonelli charged the truck and began striking Plaintiff through the open window. Compl. ¶ 26(i). Fearing for his safety, Plaintiff, while still inside the truck, drew his firearm and fired two shots in Simonelli's direction. Compl. ¶ 26(k). The shots struck Simonelli at the top of the back of his neck and the top of his shoulder. Compl. ¶ 26(l).

Investigators also spoke to several eye witnesses, who, in Plaintiff's view, corroborated his version of the shooting. Compl. ¶ 28. One witness, Roger Anderson, told the Defendant Officers that Plaintiff retreated to his truck after arguing with Simonelli, and then Simonelli attacked Plaintiff through the truck's window, at which point Plaintiff fired two shots from inside his truck. Compl. ¶ 29. A second witness, Sarah Hayes, told the Defendant Officers that Plaintiff was sitting in his truck with the driver's side window down whenever Simonelli approached him, and Plaintiff fired two shots from inside his vehicle. Compl. ¶ 30. Finally, two other witnesses, Amy Shaner and Denise Webster, told the Defendant Officers that Simonelli, while driving on Jefferson Avenue, used his car to block Plaintiff's truck, and then exited his vehicle to shout at Plaintiff on Jefferson Avenue. Compl. ¶ 31. The witnesses told the Defendant Officers that Plaintiff remained in his vehicle during the encounter on Jefferson Avenue and then eventually drove away from Simonelli, only to have Simonelli chase after him. Compl. ¶ 31.

Following the shooting, Plaintiff was asked to accompany officers to the police station for questioning. Compl. ¶ 33. Plaintiff voluntarily gave a statement to the officers regarding the

shooting. Compl. ¶ 34. He signed a waiver of his *Miranda* rights and repeated the statement describing the events to Defendants Stanek, Rush, Luppino, and Doe. Compl. ¶ 35. Plaintiff was questioned by these Defendants throughout the night and into the early morning hours of October 19, 2012, and, Plaintiff alleges, the Defendants refused to accept Plaintiff's version of events. Compl. ¶ 36. Meanwhile, the Defendant Officers continued to gather statements from other witnesses, who, according to Plaintiff, corroborated his telling. Compl. ¶ 37. Moreover, according to the complaint, the Defendant Officers and the City of Washington police, in general, knew Simonelli had a history of arrests and a reputation for provoking others with violence and threats. Compl. ¶ 40.

Defendants Stanek, Rush, and Luppino were assigned to the investigation of the shooting, and tasked with the responsibility of corroborating witness statements under the direction of Defendant Wilson. Compl. ¶¶ 37-38. To that end, they obtained a statement from Robert Newman ("Newman"), who, according to Plaintiff, gave the sole statement that contradicted his version of events. Compl. ¶ 41. Newman told the Defendant Officers that he saw Plaintiff shoot Simonelli in the chest while both men were standing outside their respective vehicles. Compl. ¶ 42. Newman's account, however, was refuted by the autopsy report, which showed that the bullets entered Simonelli's body in his neck and shoulder not his chest. Compl. ¶ 43. Newman's account was also inconsistent with the other witness statements, which indicated that Plaintiff was inside his truck, attacked, and opened fire only after being attacked. Compl. ¶ 44. Later testimony from Newman at the preliminary hearing revealed that he believed that Plaintiff was taller and bigger than Simonelli, although this was refuted by the autopsy report and the arrest report which showed that Plaintiff was smaller and shorter than Simonelli. Compl. ¶ 48.

The Defendant Officers, with the approval of Defendants Wilson and Vittone, charged

Plaintiff with criminal homicide, which includes first, second, and third-degree murder as well as voluntary and involuntary manslaughter. Compl. ¶ 45. Before doing so, however, the Defendant Officers failed to obtain the video surveillance footage from the Shop and Save parking lot where the shooting occurred; attempt to obtain any fingerprints from the scene; search Plaintiff's vehicle; obtain and/or listen to the 911 calls; swab Plaintiff for the presence of gunshot residue; swab the exterior of Plaintiff's truck or the truck surrounding Plaintiff's truck for the presence of gunshot residue; or obtain the results of the gunshot residue tests. Compl. ¶ 46. A gunshot residue test conducted on December 17, 2012, showed the presence of gunshot residue inside the cabin of Plaintiff's truck. Compl. ¶ 53. This report, Plaintiff alleges, along with the various witness statements, confirmed Plaintiff's claim that he was chased and attacked by Simonelli, fled his attacker, and shot in self-defense while inside the presumptively safe vehicle. Compl. ¶ 54. Furthermore, Plaintiff alleges, the autopsy report showed the presence of stippling on Simonelli's face and neck, which would suggest that the firearm was fired at close range and not in the manner described by Newman. Compl. ¶ 27.

After the charges were initiated, Defendant Vittone objected to Plaintiff being freed on bond. Compl. ¶ 51. Plaintiff was, as a result, held without bond for 18 months pending trial. Compl. ¶ 52. He filed two motions for bond, both of which were denied. He also filed petitioned the trial court for the issuance of a writ of *habeas corpus*,[2] arguing that the Commonwealth could not make out a *prima facie* case of first-degree murder. Common Pleas Judge Katherine B. Emery denied each motion.[3]

---

2.       Under Pennsylvania law, "a petition for writ of habeas corpus is the proper vehicle for challenging a pre-trial finding that the Commonwealth presented sufficient evidence to establish a prima facie case." *Com. v. Carbo*, 822 A.2d 60, 67 (Pa. Super. Ct. 2003).

3.       In ruling on a motion to dismiss, the Court is generally limited to reviewing the well-pleaded factual allegations in the plaintiff's complaint. However, the Court may take notice of

Prior to his trial, Plaintiff, through his defense attorney, hired an investigator to follow-up on the various witness statements and perform a thorough and competent investigation – which, Plaintiff claims, the Defendant Officers failed to conduct on their own. Compl. ¶ 58. During this investigation, several witnesses came forward whose accounts matched Plaintiff's version of events. Compl. ¶ 60. These statements were turned over to Defendant Vittone. Compl. ¶ 61. The Defendants allegedly disregarded the additional evidence and never had supplemental police reports generated from interviews with such witnesses. Compl. ¶ 62. In fact, Plaintiff alleges, the Defendant Officers took written notes from some additional witnesses and, although they knew that they would be important and trial and were favorable to Plaintiff, they shredded the notes so no record of the interviews existed for trial. Compl. ¶ 63.

Plaintiff avers that, despite these contradictory witness statements, Defendants continued with the prosecution. Compl. ¶ 64. On the eve of jury selection, Defendant Vittone authorized a plea offer, whereby Plaintiff would agree to plead guilty to third-degree murder and possibly receive a sentence in the range of three to six years, with credit for time served of 18 months. Compl. ¶ 66. Plaintiff declined the offer and went to trial. Compl. ¶ 68. Soon after that offer was rejected, it was revealed that Newman – the Commonwealth's sole witness who had placed Plaintiff outside of the vehicle during the shooting – had moved to South Carolina and would thus be unavailable to testify. Compl. ¶ 70. According to Plaintiff, Defendants never revealed when Newman moved, why he moved, and whether he was ever shown the scientific evidence that allegedly called his testimony into dispute. Compl. ¶ 71. On May 14, 2014, a jury found Plaintiff not guilty of all homicide charges. Compl. ¶ 73.

On October 17, 2014 Plaintiff initiated this action by filing a five-count Complaint

public records, including records from judicial proceedings in another court and will do so here. *Sands v. McCormick*, 502 F.3d 265, 268 (3d Cir. 2007) (citations omitted).

pursuant to 42 U.S.C. § 1983 (ECF No. 1). Against Defendants Stanek, Luppino, Rush, Wilson, and Vittone, Plaintiff alleges claims for malicious prosecution (Count I); "reckless investigation in violation of the Due Process Clause of the Fifth and Fourteenth Amendments" (Count II); false arrest (Count III); and false imprisonment (Count IV). In Count V, Plaintiff alleges a *Monell* claim against the City of Washington. On December 22, 2014, Defendants Stanek, Luppino, Rush, and Wilson filed a motion to dismiss each of the counts alleged against them. That same date, Defendant Vittone filed a motion to dismiss the claims alleged against him. The City of Washington has filed an answer on its own behalf, in which it denies the allegations and raises several affirmative defenses (ECF No. 8); it is not a party to either of the pending motions.

## II.     Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. The Court must accept as true all well-pleaded facts and allegations and must draw all reasonable inferences therefrom in favor of the plaintiff. However, as the Supreme Court made clear in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007), the "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The Supreme Court has subsequently broadened the scope of this requirement, stating that only a complaint that states a plausible claim for relief survives a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

A district court must conduct a two-part analysis when presented with a motion to dismiss for failure to state a claim. First, the Court must separate the factual and legal elements of the claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although the Court "must accept all of the complaint's well-pleaded facts as true, [it] may disregard any legal conclusions." *Id.* at 210-211. Second, the Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other

words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has

to 'show' such an entitlement with its facts." *Id.* at 211 (citing *Iqbal*, 556 U.S. at 679).

Determining "plausibility" is "'a context-specific task that requires the reviewing court to draw

on its judicial experience and common sense.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

## III.    Discussion

### A.    The Defendant Officers' Motion

The Defendant Officers seek to dismiss all of the claims against them, in both their

individual and official capacities. As an initial matter, the Court agrees that the official-capacity

claims against the Defendant Officers are redundant of the *Monell* claim against the City of

Washington. *See Foglesong v. Somerset Cnty.*, No. 13-CV-77, 2013 WL 795064, at *9 (W.D. Pa.

March 4, 2013) (citations omitted) (noting that "§ 1983 claims asserted against public officers in

their official capacities" should be dismissed as redundant "where a claim has also been made

against the public entity that employs them"). Thus, the official-capacity claims against the

Defendant Officers will be dismissed. The Court now turns to the individual capacity claims

against these Defendants.

### 1.    Malicious Prosecution, False Arrest, and False Imprisonment Claims

Counts I, III, and IV allege claims for malicious prosecution, false arrest, and false

imprisonment.[4] The essential element of each of these claims is the lack of probable cause. *See*

*Startzell v. City of Philadelphia*, 533 F.3d 183, 204 (3d Cir. 2008) (explaining that "lack of

---

4.    False arrest and false imprisonment "are 'nearly identical claims,' and 'are generally analyzed together.'" *Brockington v. City of Philadelphia*, 354 F. Supp. 2d 563, 571 n.8 (E.D. Pa. 2005) (quoting *Maiale v. Youse*, No. Civ. A. 03-5450, 2004 WL 1925004, at *12 (E.D. Pa. Aug. 27, 2004)). Nonetheless, they are still distinct claims: "[t]he basis for false arrest is the arrest itself, whereas the basis for false imprisonment is the detention that follows the false arrest." *Reedy v. Twp. of Cranberry*, No. 2:06CV1080, 2007 WL 2318084, at *3 (W.D. Pa. Aug. 9, 2007).

probable cause" is "a necessary element of a false arrest and malicious prosecution claim").

In moving to dismiss these claims, the Defendant Officers argue that Plaintiff cannot establish probable cause because this Court "is bound by the state trial court's rulings on the probable cause question presented in the underlying criminal matter." Def.'s Br. in Supp. of Mot. to Dismiss at 6, ECF No. 11. According to Defendants, the magistrate found at the preliminary hearing that the Commonwealth had satisfied its *prima facie* burden with respect to the charges and bound them over for trial. Moreover, the Defendant Officers argue, Plaintiff twice moved for the Court of Common Pleas to set bond and then for the issuance of a writ of *habeas corpus*, but Common Pleas Judge Katherine B. Emery denied each motion. Defendants contend that because the magistrate judge and Judge Emery found that the Commonwealth had established a *prima facie* case for the charge, Plaintiff is precluded from re-litigating the issue of probable cause in this action. Plaintiff counters that he was unable to appeal Judge Emery's pre-trial rulings inasmuch as his acquittal rendered an appeal moot. Thus, Plaintiff contends, he did not have a full and fair opportunity to litigate the issue of probable cause, and issue preclusion does not apply. The Court agrees with Plaintiff.

To begin with, it is important to note that this Court is not constrained by the magistrate's decision to hold Plaintiff's charges over for trial. "[T]he common law presumption raised by a magistrate's prior finding that probable cause exists does not apply to section 1983 actions." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 789 (3d Cir. 2000)). Consistent with that rule, a number of courts in this Circuit "have rejected the argument that an earlier finding of probable cause at a preliminary hearing establishes probable cause as a matter of law." *Zimmerman v. Corbett*, No. 1:13-CV-02788, 2015 WL 539783, at *5 (M.D. Pa. Feb. 10, 2015) (citing *Kline v. Hall*, No. 12-1727, 2013 WL 1775061, at *5 (M.D. Pa. Apr. 25, 2013); *Bingaman v. Buhay*, No.

06–2144, 2007 WL 707026, at *5 (M.D. Pa. Mar. 2, 2007)). The Pennsylvania courts are in agreement. *See, e.g.*, *Cosmas v. Bloomingdales Bros.*, 660 A.2d 83, 86 (Pa. Super. Ct. 1995). "Unlike a conviction," the Pennsylvania Superior Court has explained,

> the decision to hold someone over is a cursory determination, often made rather quickly and with an eye toward allowing the case to go forward if there is any arguable evidence of guilt. A preliminary hearing does not offer the full panoply of procedural safeguards, and the credibility of witnesses is not at issue. In this sense, a decision to hold someone over is more like a grand jury indictment, and less like a full-blown conviction.

*Id.* at 87. A magistrate judge's finding at a preliminary hearing may, however, be "weighty evidence" of probable cause. *McGowan v. Borough of Ambridge*, No. 02:06-CV-0858, 2008 WL 4200153, at *8 (W.D. Pa. Sept. 5, 2008) (citing *Tarlecki v. Mercy Fitzgerald Hosp.*, No. CIV.A. 01-1347, 2002 WL 1565568, *3 (E.D. Pa. 2002)).

While a magistrate judge's decision to hold charges over for trial is not dispositive, a defendant "in a federal civil-rights action can raise collateral estoppel [also known as issue preclusion] when a plaintiff attempts to relitigate in his federal suit an issue decided against him in state criminal proceedings." *Kline*, 2013 WL 1775061, at *3. This rule is most frequently invoked by § 1983 defendants whenever a plaintiff attempts to relitigate an issue decided against him at a state-court suppression hearing. *See, e.g.*, *Doswell v. City of Pittsburgh*, No. CIV.A. 07-0761, 2009 WL 1734199, at *6 (W.D. Pa. June 16, 2009) (collecting cases). "In determining whether issue preclusion applies to bar a federal court from revisiting an issue previously determined in state court, a federal court must give the state court's judgment the same preclusive effect as would be given the judgment by a court of that state." *Id.* (citing *James v. Heritage Valley Fed. Credit Union*, 197 F. App'x 102, 105 (3d Cir. 2006)). Under Pennsylvania law, issue preclusion applies if:

> (1) the issue decided in the prior adjudication was identical to the one presented in

the later action; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom it is asserted had a full and fair opportunity to litigate the issue in question in a prior action.

*Id.* (citing *James*, 197 F. App'x at 105).

The fourth element has not been established in this case. Although the Pennsylvania courts do not appear to have directly addressed this question, it is generally well settled that "the ability to appeal an adverse ruling is indispensable to a finding that there existed a full opportunity to litigate the issue." *James*, 197 F. App'x at 106. Thus, as a number of courts have recognized, whenever the need to appeal the trial court's adverse pretrial ruling is mooted by an acquittal, a plaintiff (former criminal defendant) is not precluded from relitigating the trial court's pretrial ruling in his § 1983 action. *See, e.g.*, *Wilson v. Steinhoff*, 718 F.2d 550, 552 (2d Cir. 1983); *Bradley v. Reno*, 749 F.3d 553, 555-58 (6th Cir. 2014); *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1022-23 (7th Cir. 2006); *Radcliffe v. Rainbow Const. Co.*, 254 F.3d 772, 787 (9th Cir. 2001); *Dixon v. Richer*, 922 F.2d 1456, 1459 (10th Cir. 1991); *Glover v. Hunsicker*, 604 F. Supp. 665, 666 (E.D. Pa. 1985). In this case, Plaintiff could "not immediately appeal from the denial of his pretrial application for habeas corpus relief." *Com. v. Hess*, 414 A.2d 1043, 1047 (Pa. 1980) (citation omitted). Then after his acquittal, the rulings on the pretrial motions "no longer mattered. [They] became moot in every relevant way." *Bradley*, 749 F.3d at 556. Therefore, the Court concludes that Judge Emery's rulings do not preclude Plaintiff from relitigating the probable cause issue in this venue.

Defendant Officers, in a final effort to save their argument, suggest that since Plaintiff was found guilty of possessing drug paraphernalia, he could have appealed that conviction and therein challenged Judge Emery's pretrial rulings related to the sufficiency of the Commonwealth's evidence. Thus, Defendants contend, Plaintiff *did* have a full and fair

opportunity to argue the lack of probable cause in his state court proceedings. This argument is unconvincing. Although Plaintiff could have appealed his possession conviction, the Superior Court's scope of review would have been limited to that conviction. *See Burger v. Zoning Hr'g Bd. of Mun. of Penn Hills*, 485 A.2d 879, 881 (Pa. Commw. Ct. 1984) (explaining that under Pennsylvania law an appellate court is "not authorized to disturb findings and conclusions of the trial court which are not appealed"). It would have had no reason, let alone legal basis, to review Judge Emery's pretrial rulings as to the existence of a *prima facie* case of homicide, as it is preposterous to think that Plaintiff would have appealed those rulings in light of his acquittal. Even if the Superior Court could have reviewed those rulings, it could not have reversed them in any meaningful sense. The issue of sufficiency of the evidence to charge Plaintiff with homicide was mooted by Plaintiff's acquittal. Consequently, though Plaintiff may have technically been able to file an appeal, it would not have changed the fact that Judge Emery's pretrial determination as to the sufficiency of the evidence to charge Plaintiff with homicide was insulated from review.

Accordingly, while the findings in state court are "weighty evidence" in favor of a finding of probable cause, they are not dispositive. Plaintiff alleges that he was arrested, detained, and prosecuted without probable cause, and the Defendant Officers have not attacked the sufficiency of these allegations or made any other arguments in support of dismissal of these claims (such as qualified immunity). Accepting Plaintiff's allegations as true, as must be done, the Court cannot determine as a matter of law at this stage of the proceedings that probable cause existed. Thus, the Defendant Officers' motion to dismiss Counts I, III, and IV will be denied.

### 2. Reckless Investigation

Plaintiff alleges that he has a "substantive due process right under the 5th and 14[th]

Amendments to be free from a reckless investigation," which was violated when the Defendant Officers "intentional[ly] fail[ed] . . . to corroborate the account from Newman."[5] Compl. ¶ 97. The Defendant Officers argue that because Plaintiff is collaterally estopped from contesting the state court's findings as to the sufficiency of the evidence, he cannot succeed on this claim. However, since the Court has found that collateral estoppel does not apply, this argument must be rejected. The Court will, instead, focus on whether this claim is viable.

Although the United States Court of Appeals for the Third Circuit has heretofore not recognized a stand-alone claim for reckless investigation, other courts, including some in this Circuit, have done so. *See, e.g.*, *Eckman v. Lancaster City*, 742 F. Supp. 2d 638, 653 (E.D. Pa. 2010), *aff'd*, 515 F. App'x 93 (3d Cir. 2013); *Wilson v. Lawrence Cnty.*, *Mo.*, 260 F.3d 946, 955 (8th Cir. 2001). "To bring a successful due process claim for failure to investigate, a plaintiff must show that a police officer acted intentionally or recklessly, in a manner that shocks the conscience, in failing to investigate." *Eckman*, 742 F. Supp. 2d at 653 (citing *Martin v. Anderson*, 2008 WL 4761734, at *9 n.8 (E.D. Pa. Oct. 30, 2008)). "Failure to investigate is considered in tandem with the strength or weakness of the probable cause evidence." *Id.* Thus, "[w]here probable cause evidence is weak, officers may have a greater duty to consider potential exculpatory evidence." *Id.* (citing *Walker v. Spiller*, 1998 WL 306540, at *6 (E.D. Pa. June 9, 1998)).

The Court finds that Plaintiff has adequately pled a claim for reckless investigation. In particular, he has alleged a number of actions that the Defendant Officers failed to take that

---

5. In alleging a violation of substantive due process, Plaintiff "must rely . . . on the Fourteenth Amendment's Due Process Clause, which applies to state and local actors, rather than the Fifth Amendment's Due Process Clause, which applies to federal actors." *Washington-Pope v. City of Philadelphia*, 979 F. Supp. 2d 544, 552 (E.D. Pa. 2013). Thus, the Fifth Amendment is not relevant to the foregoing analysis.

could have possibly called Newman's account of the shooting into question and corroborated Plaintiff's self-defense claim, which the Commonwealth had the burden of negating beyond a reasonable doubt. *See Com. v. Rivera*, 983 A.2d 1211, 1221 (Pa. 2009) ("When the defendant introduces evidence of self-defense, the Commonwealth bears the burden of disproving such a defense beyond a reasonable doubt."). If these allegations are proven to be true – if Defendant Officers did, indeed, fail to investigate potentially exculpatory evidence – then their conduct could be found to be intentional or reckless. Thus, this claim will be permitted to survive.

**B.     Defendant Vittone's Motion**

Defendant Vittone argues that all of the claims against him must be dismissed because he is entitled to absolute prosecutorial immunity. Alternatively, he contends that even if he is not entitled to absolute immunity, the facts alleged are insufficient to state a claim against him in his individual capacity. Vittone also argues that Plaintiff has failed to sufficiently allege an official-capacity claim, which, he contends, is for all intents and purposes a claim against Washington County.

**1.     Individual-Capacity Claim**

The United States Supreme Court has recognized that, in appropriate cases, a prosecutor may be absolutely immune from suit under § 1983. *See Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). However, "[a] prosecutor bears the 'heavy burden' of establishing entitlement to absolute immunity." *Odd v. Malone*, 538 F.3d 202, 207 (3d Cir. 2008) (quoting *In re Montgomery Cnty.*, 215 F.3d 367, 373 (3d Cir. 2000)). As our appellate court has instructed, there is a "presumption that qualified rather than absolute immunity is appropriate." *Id.* (citing *Carter v. City of Philadelphia*, 181 F.3d 339, 355 (3d Cir. 1999)). Indeed, the Supreme Court has "been 'quite sparing' in recognizing absolute immunity for state actors in this context." *Buckley v.*

*Fitzsimmons*, 509 U.S. 259, 269 (1993) (quoting *Forrester v. White*, 484 U.S. 219, 224 (1988)). To defeat the presumption that only qualified immunity applies, "a prosecutor must show that he or she was functioning as the state's advocate when performing the action(s) in question." *Odd*, 538 F.3d at 207 (citing *Yarris v. Cnty. of Delaware*, 465 F.3d 129, 136 (3d Cir. 2006)). "This inquiry focuses on 'the nature of the function performed, not the identity of the actor who performed it.'" *Id.* (quoting *Light v. Haws*, 472 F.3d 74, 78 (3d Cir. 2007)). A prosecutor is absolutely immune from suit only for actions taken "in a judicial or 'quasi-judicial' capacity." *Id.* (citing *Giuffre v. Bissell*, 31 F.3d 1241, 1251 (3d Cir. 1994)). In other words, while a prosecutor enjoys immunity for "actions 'intimately associated with the judicial phases of litigation,'" absolute immunity does not apply "to administrative or investigatory actions unrelated to initiating and conducting judicial proceedings." *Id.* (quoting *Giuffre*, 31 F.3d at 1251).

"Analysis of prosecutorial immunity questions thus has two basic steps, though they tend to overlap." *Schneyder v. Smith*, 653 F.3d 313, 332 (3d Cir. 2011). First, "[t]he court must ascertain just what conduct forms the basis for the plaintiff's cause of action[.]" *Id.* Second, the court is required "to determine what function (prosecutorial, administrative, investigative, or something else entirely) that act served." *Id.*

Turning to the first inquiry, it is somewhat unclear "just what conduct" Plaintiff is complaining about. While Plaintiff makes a litany of boilerplate allegations against Vittone, he is mentioned by name in just five out of the 154 paragraphs in the complaint. *See* Compl. ¶¶ 45, 51, 61, 62, 66. One other paragraph makes a conclusory allegation with regard to Vittone's office. *See* Compl. ¶ 83. And another avers that the District Attorney's Office was "influenced" by the Defendant Officers "to file murder charges against the Plaintiff." Compl. ¶ 84. Fairly summarized, the complaint alleges that Vittone (1) approved bringing charges against and

prosecuting Plaintiff, (2) objected to releasing Plaintiff on bond pending trial, (3) disregarded witness statements procured by Plaintiff's counsel and handed over to the prosecution, and (4) authorized a plea deal that Plaintiff rejected.

The Court is skeptical of whether these allegations, even accepted as true and liberally construed in Plaintiff's favor, are enough to state a claim against Vittone. This is especially true with respect to the false arrest/false imprisonment claims since Plaintiff has not alleged that Vittone actually instigated his arrest. *See O'Hara v. Hanley*, No. CIV.A. 08-1393, 2009 WL 2043490, at *5 (W.D. Pa. July 8, 2009) (explaining that false arrest/false imprisonment claims "can be brought against an individual other than the arresting officer when that person 'instigates' the arrest") (citations omitted). But it is also true with respect to the malicious prosecution claim because nowhere in Plaintiff's complaint does he actually allege that Vittone, himself, initiated the proceedings against him. Nevertheless, the Court will turn to the second part of the absolute immunity inquiry and, one-by-one, determine what hat – that of an advocate, an investigator, an administrator, or someone else – Vittone was wearing when he engaged in the alleged actions.

First, the Court finds that Vittone's actions in approving the charges against Plaintiff fall within the scope of his prosecutorial function. As noted, Plaintiff has not alleged that Vittone was in any way involved in the investigation of Plaintiff. He was not called to the scene after the shooting. He was not involved in interviewing witnesses. He was not involved in gathering evidence. All of these tasks were assigned to Defendants Stanek, Rush, and Luppino, "under the direction of Defendant Wilson . . . ." Compl. ¶ 39. In fact, Vittone did not become involved until after the Defendant Officers conducted an investigation and only then for the purpose of approving the charges sought by the Defendant Officers. These are quintessential prosecutorial

tasks, for which Vittone is absolutely immune from suit. *See Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992) (citing *Hunt v. Jaglowski*, 926 F.2d 689, 693 (7th Cir. 1991) for the proposition that a "prosecutor is absolutely protected when approving or disapproving charges sought by police"); *Winston v. Daniels*, No. 1:10-CV-74-SJM, 2011 WL 2680282, at *11 (W.D. Pa. July 8, 2011) (holding that "to the extent [the district attorney] or his office were involved in approving the filing of the criminal harassment charge against" the plaintiff "these are clearly functions intimately associated with the judicial phase of the criminal process and, therefore, prosecutorial immunity applies"); *Jaslar v. Zavada*, No. 3:CV-05-2080, 2009 WL 82553, at *1 (M.D. Pa. Jan. 12, 2009) (holding that district attorney's "conduct in approving the filing of charges against Plaintiffs is protected under the doctrine of absolute immunity . . ."). Holding otherwise could create a disincentive for prosecutors like Vittone "'to go forward with a close case'" – which this one seems to have been – "'where an acquittal likely would trigger a suit against him for damages.'" *Buckley*, 509 U.S. at 278 (quoting *Imbler*, 424 U.S. at 426 n.24).

Likewise, whenever Vittone objected to Plaintiff being freed on bond, he was acting as an advocate for the Commonwealth and, thus, his decision is protected by absolute immunity. *See Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1149 (2d Cir. 1995) (internal citations omitted) (concluding that "actions in connection with a bail application are best understood as components of the initiation and presentation of a prosecution, and therefore are protected by absolute immunity"). So too is the alleged decision to disregard the additional evidence turned over by Plaintiff's counsel prior to trial, as evaluating and determining which evidence to rely upon in the course of a prosecution is a key function of a prosecutor. *See Jerrytone v. Musto*, 167 F. App'x 295, 300 (3d Cir. 2006) (explaining that "[p]rosecutors enjoy absolute immunity . . . for evaluation of evidence . . ."); *Cruz v. City of Philadelphia*, No. CIV.A. 07-493, 2007 WL

2317372, at *4 (E.D. Pa. Aug. 7, 2007) ("find[ing] that Plaintiffs' claim that the D.A. Defendants ignored evidence in deciding to prosecute Cruz is encompassed in the act of 'obtaining, reviewing and evaluation of evidence' in the initiation of a criminal prosecution, which is clearly subject to absolute prosecutorial immunity"). Next, to the extent Plaintiff is alleging that Vittone somehow violated his rights during the plea-bargaining process, this conduct is also protected by absolute immunity. *See Moretti v. Seilhammer*, No. 2:07CV600, 2008 WL 282469, at *1 (W.D. Pa. Jan. 31, 2008) (explaining that absolute immunity extends to "decisions as to whether and under what conditions a case should be disposed of by plea bargain").

Plaintiff counters that under the Supreme Court's reasoning in *Buckley*, absolute immunity does not attach until a prosecutor has probable cause to arrest and/or prosecute a defendant. To support this argument, Plaintiff quotes the following sentence from *Buckley*: "A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." 509 U.S. at 275. As the Sixth Circuit Court of Appeals has observed, however, this sentence must be read "in the context of the *Buckley* decision in its entirety." *Prince v. Hicks*, 198 F.3d 607, 614 (6th Cir. 1999). The prosecutors in *Buckley* were accused, *inter alia*, of fabricating evidence linking the plaintiff's boot to a boot print left at a murder scene, while working alongside investigators under the direction of the sheriff and the state's attorney. *Buckley*, 509 U.S. at 261. The plaintiff was not under arrest at the time of the alleged fabrication, a grand jury had not been empaneled, and no one contended that probable cause existed to arrest the plaintiff. *Id.* at 274. Thus, the Supreme Court held, because the prosecutor's "mission at that time was entirely investigative," their actions were not protected by absolute immunity. *Id.* In so holding, the Court found it important that the prosecutors failed to cite "any authority that supports an argument that a prosecutor's fabrication of false evidence

during the preliminary investigation of an unsolved crime was immune from liability at common law . . . ." *Id.*

In a footnote immediately following the sentence upon which Plaintiff so heavily relies, the *Buckley* Court fleshed out its meaning. Responding to a criticism leveled in Justice Scalia's dissent regarding the anomalous situation that might arise from the Court's holding, the Court retorted

> there is no "true anomaly" in denying absolute immunity for a state actor's investigative acts made before there is probable cause to have a suspect arrested just because *a prosecutor would be entitled to absolute immunity for the malicious prosecution of someone whom he lacked probable cause to indict*. That criticism ignores the essence of the function test. The reason that lack of probable cause allows us to deny absolute immunity to a state actor for the former function (fabrication of evidence) is that there is no common-law tradition of immunity for it, whether performed by a police officer or prosecutor. The reason that we grant it for the latter function (malicious prosecution) is that we have found a common-law tradition of immunity for a prosecutor's decision to bring an indictment, *whether he has probable cause or not*.

*Id.* at 274 n.5 (emphasis added).

As the Sixth Circuit has explained, that footnote makes clear that "[t]he dividing line is not, as [Plaintiff] argues, the point of determination of probable cause. Instead, the dividing line is the point at which the prosecutor performs functions that are intimately associated with the judicial phase of the criminal process." *Prince*, 198 F.3d at 614. Thus,

> [a] prosecutor performing an investigative function before she has probable cause to arrest a suspect cannot expect to receive the protection of absolute immunity, but a prosecutor who initiates criminal proceedings against a suspect whom she had no probable cause to prosecute is protected by absolute immunity.

*Id.* (citation omitted). *See also Lawlor v. Connelly*, No. 3:10-CV-1282 JCH, 2011 WL 1740178, at *7 (D. Conn. May 5, 2011), *aff'd*, 471 F. App'x 64 (2d Cir. 2012) ("The *Buckley* Court's discussion . . . must be read not as establishing a bright-line rule based on the existence or non-existence of probable cause, but instead as emphasizing one important indication that the

prosecutors there were like police detectives in the process of investigating an 'unsolved crime,' rather than preparing to initiate the judicial phase of the criminal process.").

In light of that clarification, the Court must reject Plaintiff's argument. All of the allegations Plaintiff has raised against Vittone relate to his role as a prosecutor in the course of the criminal proceedings brought against Plaintiff. No matter whether Vittone lacked probable cause, these actions are absolutely protected. Accordingly, the claims against Vittone in his individual capacity will be dismissed with prejudice.

### 2. Official-Capacity Claim

Official-capacity claims "represent only another way of pleading an action against an entity for which an officer is an agent[.]" *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 690 n.55 (1978). So by naming Defendant Vittone in his official capacity, Plaintiff actually sued Washington County, Vittone's employer. "That is the legal import of suing [a government official] in his or her official capacity." *Helm v. Palo*, No. CIV.A. 14-6528, 2015 WL 437661, at *9 (E.D. Pa. Feb. 3, 2015). Consequently, the Court must look to *Monell* and its progeny to determine whether this claim can withstand Vittone's motion to dismiss.

Under *Monell*, a governmental entity cannot be held vicariously liable under § 1983 for the alleged constitutional violations of its officials. *Monell*, 436 U.S. at 691. However, liability may be imposed if the governmental entity "itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, --- U.S. ----, 131 S. Ct. 1350, 1359 (quoting *Monell*, 436 U.S. at 692). Hence, "[p]laintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." *Id.* (quoting *Monell*, 436 U.S. at 691). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials,

and practices so persistent and widespread as to practically have the force of law." *Id.* (citations omitted). As our appellate court has further explained, there are at least three ways in which a person can be found to be acting under an "official policy or practice":

> (1) the individual acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity, (2) the individual himself has final policy-making authority such that his conduct represents official policy, or (3) a final policy-maker renders the individual's conduct official for liability purposes by having delegated to him authority to act or speak for the government, or by ratifying the conduct or speech after it has occurred.

*Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006) (citations omitted).

Defendant Vittone argues that Plaintiff has not adequately pled the existence of a municipal policy or custom that caused Plaintiff's alleged harm and, thus, he cannot establish a basis to impose liability on the County. In response, Plaintiff argues that "'[p]ractice and custom' is merely one way to establish municipal liability." Pl.'s Br. at 12, ECF No. 18. According to Plaintiff, he "clearly pled that Defendant Vittone personally . . . participated and directed the reckless investigation." *Id.* Furthermore, Plaintiff argues, "[b]ecause Defendant Vittone is the District Attorney, Municipal Liability attaches via supervisory liability." *Id.*

Plaintiff's argument appears to rest on the flawed assumption that supervisory liability and municipal liability are one and the same. They are not. *See* Martin A. Schwartz, *Section 1983 Litigation* (2d ed. 2008). Supervisory liability imposes individual or personal liability on a defendant, whereas "municipal liability is a form of entity liability." *Id.* As a result, "supervisory liability does not depend on" the existence of "a municipal policy or practice" that caused the alleged constitutional violation. *Id.* Rather, it seeks to hold a supervisory defendant liable, in his own right, for establishing or maintaining an unconstitutional policy, practice or custom, with deliberate indifference to the consequences, or for "participat[ing] in violating the plaintiff's

rights, direct[ing] others to violate them, or" acquiescing in the wrongdoing of a subordinate. *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014) (citations omitted) Thus, municipal liability clearly does *not* attach "via supervisory liability."

Perhaps, however, Plaintiff is attempting to argue that because Vittone is Washington County's District Attorney, he was acting as a final policymaker, such that his actions represented the official policy of the County for purposes of imposing municipal liability. But even construed in this manner, Plaintiff's argument fails.

To decide "if an official has final policy-making authority, and can thus bind the [governmental entity] by his conduct, a court must determine (1) whether, as a matter of state law, the official is responsible for making policy in the particular area . . . and (2) whether the official's authority to make policy in that area is final and unreviewable." *Hill*, 455 F.3d at 245 (internal citations omitted). The Third Circuit Court of Appeals has recognized that district attorneys in Pennsylvania "have a dual or hybrid status." *Carter*, 181 F.3d at 353 (quoting *Coleman v. Kaye*, 87 F.3d 1491, 1504 (3d Cir. 1996)). On the one hand, "a district attorney acts as an agent of the county (and hence can be considered a county policymaker) when he or she 'engages in purely administrative tasks unrelated to prosecutorial functions.'" *Kitko v. Young*, No. CIV.A. 3:10-189, 2012 WL 1969228, at *4 (W.D. Pa. May 31, 2012) (quoting *N.N. v. Tunkhannock Area Sch. Dist.*, 801 F. Supp. 2d 312, 318 (M.D. Pa. 2011)). On the other hand, "when engaged in his or her 'basic function – enforcement of the Commonwealth's penal statutes' [–] a district attorney in Pennsylvania represents the interests of the Commonwealth and not the County." *Williams v. Fedor*, 69 F. Supp. 2d 649, 660 (M.D. Pa. 1999) (quoting *Com. ex. rel. Specter v. Bauer*, 261 A.2d 573, 575 (Pa. 1970)). Thus, "the status of the district attorney as a state or county official hinges on whether the actions alleged were prosecutorial or

administrative in nature." *Wallace v. Powell*, No. 3:09-CV-0291, 2009 WL 6850318, at *10 (M.D. Pa. Nov. 20, 2009).

The Court has already determined that all of Vittone's alleged conduct was prosecutorial in nature. It necessarily follows that he was acting as a state, and not county, policymaker during the relevant time frame, and, in turn, that this theory of municipal liability cannot be pursued. After scouring the complaint, the Court has not been able to uncover any other potentially viable theories of municipal liability alleged against Washington County. Therefore, the official-capacity claim – which again is really just a claim against the County – will be dismissed.

## IV. Conclusion

For the foregoing reasons, the Defendant Officers' motion will be granted in part, and denied in part, while Defendant Vittone's motion will be granted. An appropriate order follows.

McVerry, S.J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**BRANDON THOMAS,**

           **Plaintiff,**

           **v.**

**DANIEL STANEK**, *in his Official Capacity as Police Officer for the City of Washington and in his Individual Capacity*, **CHRISTOPHER LUPPINO**, *in his Official Capacity as Police Officer for the City of Washington and in his Individual Capacity*, **DAN RUSH** *a/k/a* **DANIEL RUSH**, *in his Official Capacity as Police Officer for the City of Washington and in his Individual Capacity*, **ROBERT WILSON**, *in his Official Capacity as Police Officer for the City of Washington and in his Individual Capacity*, **JOHN DOE**, *in his Official Capacity as Police Officer for the City of Washington and in his Individual Capacity*, **CITY OF WASHINGTON** *a municipal corporation*, and **EUGENE A. VITTONE**, *in his Official Capacity as District Attorney of Washington County and in his Individual Capacity*,

           **Defendants.**

**2:14-cv-1415**

## ORDER OF COURT

**AND NOW**, this 23rd day of February, 2015, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** as follows:

1.     The RULE 12(b)(6) MOTION TO DISMISS (ECF No. 9) filed by Defendants Daniel Stanek, Christopher Luppino, Daniel Rush, and Robert Wilson is granted in part, and denied in part. To wit, the official-capacity claims against these Defendants are **DISMISSED**.

2.     "John Doe" is **DISMISSED** as a Defendant pursuant to Fed. R. Civ. P. 4(m).

3.     DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6) (ECF No. 10) filed by Defendant, Eugene Vittone, is

**GRANTED**. All of the claims against Defendant Vittone are **DISMISSED**.

It is **FURTHER ORDERED** that the caption in this action is hereby **AMENDED** as follows:

| | |
|---|---|
| **BRANDON THOMAS,** | ) |
| | ) |
| | ) |
| **Plaintiff,** | ) **2:14-cv-1415** |
| | ) |
| **v.** | ) |
| | ) |
| **DANIEL STANEK**, *in his Individual Capacity*, | ) |
| **CHRISTOPHER LUPPINO**, *in his Individual* | ) |
| *Capacity*, **DAN RUSH** *a/k/a* **DANIEL RUSH**, *in his* | ) |
| *Individual Capacity*, **ROBERT WILSON**, *in his* | ) |
| *Individual Capacity*, and **CITY OF** | ) |
| **WASHINGTON**, *a municipal corporation*, | ) |
| | ) |
| **Defendants.** | ) |

The Defendant Officers shall file an answer to Plaintiff's amended complaint **on or before March 16**, **2015**. The parties shall confer as necessary and shall file with the Court the Stipulation Selecting ADR Process and the Rule 26(f) Report **on or before April 13, 2015**. The Initial Case Management Conference is hereby **SCHEDULED** on **May 1, 2015, at 1:00 p.m.** in Courtroom 6C.

BY THE COURT:

s/Terrence F. McVerry
Senior United States District Judge

cc:     **Frank C. Walker II, Esq.**
         Email: frank@frankwalkerlaw.com

         **Anthony J. Rash, Esq.**
         Email: arash@dmclaw.com

         **Paul D. Krepps, Esq.**
         Email: pdkrepps@mdwcg.com

**April L. Cressler, Esq.**
Email: alcressler@mdwcg.com

(via CM/ECF)